IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM BLACK, JX-3616, )
    Petitioner, )
     )
    v. ) 2:16-cv-1718
     )
DEPARTMENT OF CORRECTIONS, )
Et al., )
    Respondents. )

MEMORANDUM OPINION and ORDER

William Black, an inmate at the State Correctional Institution-Mahanoy has presented a petition for a writ of habeas corpus. For the reasons set forth below the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

Black is presently serving a life sentence imposed following his conviction by a jury of second degree murder at No. CP-26-CR-943-2009 in the Court of Common Pleas of Fayette County, Pennsylvania. This sentence was imposed on February 11, 2011.[1]

An appeal was taken to the Superior Court in which the issues presented were:
1. No scientific link to prove defendant guilty of killing victim.
2. Manifestly against weight and sufficiency of evidence because no eye witness testimony to place defendant at scene of Pierce's death or to prove him guilty of killing victim.
3. Attorney for Commonwealth mentioned in closing argument no proof provided of anyone else who killed victim.[2]

On June 1, 2012, the judgment of sentence was affirmed[3] and allowance of appeal was denied by the Pennsylvania Supreme Court on March 1, 2013.[4]

---

[1] See: Petition at ¶¶1-6.
[2] See: Exhibit 10a to the answer at p.7.
[3] See: Exhibit 10 to the answer.
[4] See: Exhibit 11 to the answer.

On November 4, 2013, Black filed a post-conviction petition.[5] Relief was denied on August 28, 2014[6] and an appeal to the Superior Court was filed in which the issues presented were:

1. Trial counsel was ineffective for failing to cross examine the forensic gunshot expert.
2. Trial counsel was ineffective for failing to object to the introduction of the evidence of the sweatshirt which was the victim's and not the appellant's.
3. Trial counsel was ineffective for failing to request the identification of the confidential informant whose tip led to the search of the trash.
4. Trial counsel was ineffective for failing to interview or call to testify the alibi witness who would have testified that the appellant was with him during the period that the shooting occurred.
5. Prosecutorial misconduct occurred when the Commonwealth introduced the sweatshirt of the victim as evidence causing the jury to confuse the item with one taken from the residence of the appellant.[7]

On May 19, 2016 the denial of post-conviction relief was affirmed.[8] Relief was not sought from the Pennsylvania Supreme Court.[9]

In the instant petition executed on October 31, 2016 and received in this Court on November 15, 2016, petitioner contends he is entitled to relief on the following grounds:

1. Ineffective assistance of counsel for failing to request specific notice of the charges in the indictment relating to 18 Pa.C.S.§2501 criminal homicide. Also procedural due process was violated when Commonwealth failed to provide specific notice of the charges in the indictment at arraignment.
2. Attorneys did not adequately prepare for the introduction of gunshot residue and DNA evidence presented at trial by failing to request of trial judge funding to hire, obtain, consult expert witnesses or to perform independent investigation to challenge Commonwealth evidence.
3. Petitioner was denied constitutionally effective counsel when trial and post-conviction counsel failed to conduct any pre-trial investigation, hire an investigator to conduct such an investigation or contact five (5) witnesses whose testimony would have helped exonerate petitioner of charges and effectively denied compulsory process and meaningful effective cross examination in each regard.
4. Suppression court erred in finding sufficient probable cause for admission of evidence at trial and trial counsel failed to show evidence on affidavit lacked probable cause to support a search.

---

[5] See: Exhibit 12 to the answer.
[6] See: Exhibit 14 to the answer at p.29.
[7] See: Exhibit16 at pp. 5-6.
[8] See: Exhibit 16 to the answer.
[9] See: Exhibit 14 to the answer.

5. Attorney failed to impeach Tpr. Leiberum concerning his perjury statements he gave between preliminary hearing and suppression hearing.
6. Petitioner's Fourth, Fifth and Sixth Amendment to the U.S. Constitution and Article I, §§ 8 & 9 of the Pennsylvania Constitution were violated when misleading facts were allowed into trial.
7. Petitioner's rights to procedural due process and substantive due process were violated when typographical error occurred in the Court of Common Pleas opinion.
8. Ineffective assistance of counsel for failing to have witnesses' drug tested before testimonial appearance at trial.
9. Violations regarding the conflicting and misapplication of the state concerning sentence. No statutory authorization for sentence imposed violates due process of law pursuant to U.S. Constitution Amendments 5 & 14 as well as Pennsylvania Constitution Article I, Section 9. Also petitioner cannot lawfully be committed and/or serve sentence on D.O.C. property or under the custody of the Pennsylvania Department of Corrections.

The background to this prosecution is set forth in the June 1, 2012 Memorandum of the Superior Court setting forth the opinion of the trial court:

> Evidence presented at trial held February 7 through February 11, 2011, included the testimony of Jamie Douglas of Denbo, Fayette County, who stated that she knew both the victim and [Appellant]. Ms. Douglas testified that earlier in April 2009, [Appellant] asked her to use her cell phone to call the victim to see about his money. She knew [Appellant] actually called the victim because his name came up in her contact list on the phone, [Appellant] appeared to Ms. Douglas as "pissed", and she overheard him tell the victim that he wanted his money.
>
> Another witness, Tina Pitcock, testified that she knows [Appellant] as "Teeni" and thought he was one of her best friends. She told the jury that she also knew the victim,… and had been with [him] at [Appellant's] house. On the day of the crime, April 20, 2009, [Appellant] borrowed her car, a Mustang, from about 7:00 P.M. until he returned it at about 8:17 P.M., when she then gave him a ride to the home of his cousin, Brandi. When she allowed [Appellant] to use her vehicle, Ms. Pitcock knew he was trying to collect money from the victim. An hour or two after dropping [Appellant] off at Brandi's residence, Ms. Pitcock went back to Brandi's house to borrow either cigarettes or money to buy some. While there, she saw [Appellant] for the last time.
>
> Commonwealth witness April Krushak told the jury that she knows [Appellant] and was talking to him at approximately 7:30 P.M. on April 20, 2009, on her front porch when they saw the victim drive by.

[Appellant] got into his own silver-colored Mustang and drove off in the same direction that the victim had been going. Ms. Krushak also testified that a few weeks before the day of the murder, she had been involved in a telephone call with [Appellant], during which [he] said he wanted to get in touch with the victim to "fuck him up" because the victim allegedly owed him money. When Ms. Krushak saw [Appellant] on the day of the crime, [Appellant] was wearing a black hooded sweatshirt and jeans. When she last saw the victim driving away in his green car and [Appellant] driving after him in the silver Mustang, both men were headed toward Brownsville, Fayette County. She heard the next day that somebody had been shot in Brownsville.

At some point later in the evening of April 20th, [Appellant] arrived alone at the residence of Brandi Brooks, his cousin, on Water Street in Brownsville. He stayed there for a couple of hours and left [at] about 2:00 A.M. the following morning (April 21st). A couple of days later [Appellant] called Ms. Brooks to tell her to make sure everything was cleaned up in her house. He also told her to throw her three garbage bags in a dumpster located in one of the housing projects some distance away.[Appellant] told his cousin that she needed to get rid of her garbage because of the drug paraphernalia in it, and offered to babysit her children so she could drive the garbage bags to the project dumpster. Ms. Brooks removed the garbage contained in the three black plastic bags from her residence, but put it into the trash can right outside instead of removing it to a dumpster as [Appellant] had instructed. On April 24, 2009, Trooper Beverly Ashton went to Brandi Brooks' residence and obtained her consent to take the three garbage bags from her trash can. Trooper Ashton then drove the bags to the state police barracks and searched them, eventually finding therein the victim's cell phone and his wallet which had within it his driver's license.

Pennsylvania State Police Trooper Cristian Lieberum, the lead investigator in this case, questioned [Appellant] as to his whereabouts on April 20, 2009, and the answers [Appellant] provided differed in germane and relevant details from the statements given by other witnesses. Trooper Lieberum then obtained a search warrant for [Appellant's] Brownsville residence, pursuant to which he found a dark grey hooded sweatshirt, which he confiscated. Said sweatshirt was later determined to belong to the victim. On April 28, 2009, the trooper served a search warrant on [Appellant] so as to take his palm prints and a [buccal] swab. Trooper Lieberum asked no questions during the execution of the search warrant, but when [Appellant] asked him how the investigation was going, the officer told him he was in custody for the crime and he was getting the credit for it.

> [Appellant] then replied that you don't get any credit for wasting a basehead.
>
> Alfred J. Schwoeble, a forensic technical advisor [with] the R.J.Lee Group, an analytical laboratory, testifying as an expert in gunshot residue analysis, told the jurors that one particle consistent with gunshot residue was found on the steering wheel of the silver Mustang. More particles consistent with gunshot residue were found on the grey sweat shirt belonging to the victim as well as on his wallet (record references omitted).[10]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411

---

[10] See: Exhibit 10 to the answer at pp.3-4. We also observe that in its August 27, 2014 opinion, the post-conviction court wrote (Answer Exhibit 15 at pp.7-8):
> [Petitioner] now cites this Court's misstatement/typographical error, which appear on page 4 of its appeal opinion filed on April 21, 2011, as evidence that the trial testimony about two different sweatshirts confused the jury. The inaccurate sentence in the Opinion says that the sweatshirt retrieved by the police belonged to the victim, when in fact it belonged to Petitioner. Petitioner now asserts that the Commonwealth's questioning of the police witnesses concerning two sweatshirts, both of which were grey, caused the jurors to incorrectly believe that the victim's sweatshirt was found during the search of Petitioner's mother's residence and/or the Petitioner's sweatshirt was the one tested and found to contain gunpowder residue. An objective reading of the trial transcript … reveals that one grey hooded sweatshirt was removed from Petitioner's mother's home, but … it was not the sweatshirt sent to the laboratory for testing. The sweatshirt tested at the lab …belonged to the victim. Any confusion on this Court's part, apparent or inferred from the aforesaid Opinion, as to the ownership of the sweatshirt removed from Petitioner's mother's residence, is not, in and of itself probative in any way of confusion on the part of the jury… Petitioner failed to meet his burden to establish trial counsel's ineffectiveness due to failure to object to the introduction of the victim's sweatshirt and the related test results as evidence…

U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010). This is a very difficult burden to meet. Harrington v. Richter, 131 S.Ct. 770 (2011).

There is no showing that petitioner's 1st, 2nd, 3rd, 4th, 7th, 8th and 9th issues where ever raised or exhausted in the courts of the Commonwealth, and at this juncture those issues can no longer be raised in those courts. In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, the petitioner has failed to exhaust the available state court remedies on these issues and no further consideration of these issues is warranted here.

In his fifth argument petitioner contends that counsel was ineffective in failing to challenge the testimony of Trooper Leiberum at the preliminary hearing which allegedly conflicted with his suppression hearing testimony regarding how he learned of the conversations between the petitioner and Ms. Brooks regarding her trash.[11] In his Sixth claim petitioner appears to allege that counsel was ineffective in failing to distinguish between victim's sweat shirt recovered from the victim and the petitioner's sweat shirt which was confiscated from his home.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 688; <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000). Second, under <u>Strickland</u>, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694. The <u>Strickland</u> test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See <u>Strickland</u>, 466 U.S. at 687; <u>Rainey v. Varner</u>, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. <u>Rolan v. Vaughn</u>, 445 F.3d 671 (3d Cir.2006).

In his petition, Black contends that

> At the preliminary hearing on 6/15/09, Tpr. Leiberum testified that police received information about a phone call between petitioner and Brandi Brooks concerning her trash… On 4/24/09 police executed a search of Ms. Brooks residence and obtained three (3) garbage bags

---

[11] In his affidavit in support of the criminal complaint, Trooper Lieberum set forth "investigation has determined that [petitioner] contacted Brandi Brooks on 04/24/09. Brooks related that [petitioner] instructed her to get rid of her garbage. [Petitioner] instructed Brandi Brooks that she should take the garbage to Snowden Terrance and throw [it] in [the] dumpster up there." (Exhibit L(2) to answer).

> from her trash … eventually finding therein the victim's cell phone and wallet …
>
> At suppression hearing which was denied 7/28/10, Tpr. Leiberum testified that police did not receive any information in investigation concerning a phone call between petitioner and Ms. Brooks concerning her trash, which contradicted his testimony at preliminary hearing…(Petitioner's brief at p.9).

Whether or not there was an inconsistency in the Trooper's testimony at those two preliminary proceedings, at trial he testified that petitioner admitted to him that he had called Ms. Brooks and advised her to remove her garbage because he was aware that the garbage contained marijuana (TT. 458). Petitioner corroborated this testimony (TT. 519-20, 535, 548). Thus, the fact of the existence or non-existence of inconsistent testimony becomes a non-issue, and does not provide any basis for relief. In the same manner, the allegation that counsel was ineffective in failing to determine who alerted the police about the phone call is likewise immaterial since Black had no standing to challenge the seizure. . United States v. Cortez-Dutrieville, 743 F.3d 288 (3d Cir.), cert. denied 134 S.Ct. 2156 (2014).

In his sixth issue, petitioner contends that counsel was ineffective for permitting confusion to exist about the sweatshirt seized from his home and the victim's sweatshirt. Specifically, he focuses on the testimony of the Trooper Lieberum who in response to a question about seizing a sweatshirt from petitioner's residence testified that it was a grey sweatshirt and it was not the shirt submitted to the forensic lab for testing (TT. 467-468). An awkward attempt to clarify confusion between this sweatshirt and the sweatshirt transported to the forensic lab followed: "so that sweatshirt that you took … was not tested by them for any gunshot residue; correct? … No, ma'am… The grey sweatshirt that they thought – that Mr. Schwoeble testified to is the victim's sweatshirt; correct? … Correct)." (TT.468).

At trial the forensic expert Mr.Schwoeble testified that the sweatshirt delivered to his forensic lab did contain gunshot residue (TT. 171-172) and as Trooper Lieberum testified that shirt belonged to the victim. While petitioner contends there was some confusion between the two sweatshirts, the testimony is clear that the tested sweatshirt belonged to the victim and not the petitioner. Counsel cannot be deemed to have been ineffective for failing to pursue a meritless issue. Real v. Shannon, 600 F.3d 302, 310 (3d Cir. 2010).

Thus, petitioner's allegations of ineffective assistance of counsel are without merit.

Because it appears that the petitioner's conviction was not secured in any manner contrary to federal law as determined by the Supreme Court nor involved an unreasonable application of that law, he is not entitled to relief here. 28 U.S.C. § 2254(d)(1). Accordingly, the petition of William Black for a writ of habeas corpus will be denied and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

Filed: August 24, 2017             s/ Robert C. Mitchell  
United States Magistrate Judge

ORDER

AND NOW, this 24th day of August 2017 for the reasons set forth in the foregoing Memorandum, the petition of William Black for a writ of habeas corpus (ECT No. 1) is DISMISSED, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is DENIED.

Pursuant to Rule 4(a), F.R.App. P., any party seeking to appeal this order must do so within thirty (30) days by mailed a notice of appeal to the Clerk, Joseph F. Weis, Jr. United States Courthouse, 700 Grant Street, Pittsburgh, PA 15219.

s/ Robert C. Mitchell
United States Magistrate Judge